**Helen MITCHELL, et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**Nos. 772–71 to 775–71.**

United States Claims Court.

Sept. 12, 1986.

Charles A. Hobbs, Washington, D.C., attorney of record, for plaintiffs. Jerry C. Straus, Marsha Kostura, and Hobbs, Straus, Dean & Wilder, Washington, D.C., of counsel.

Edward J. Passarelli, with whom was Asst. Atty. Gen., F. Henry Habicht, II, Washington, D.C., for defendant. Arthur Biggs and Richard De Clerck, Dept. of Interior, Portland, Or., of counsel.

## OPINION ON RECONSIDERATION

### WIESE, Judge.

The plaintiffs in these consolidated actions seek damages from the Government stemming from its alleged mismanagement of their timber resources. The procedural history of this case is a long one, *see Mitchell v. United States*, 10 Cl.Ct. 63, 65 n. 1 (1986), the most recent judicial pronouncement being this court's opinion dated May 22, 1986. In that opinion the court granted the Government's "Motion for Partial Summary Judgment on Accrued Claims Barred By Statute of Limitations", holding that plaintiffs could sue for only those claims arising in the six years immediately preceding the filing of suit. *See id.* at 77–78. Plaintiffs now ask us to reconsider one paragraph of that decision, having to do with their so-called "regeneration claim". The parties have briefed the issues involved, and the court now concludes that plaintiffs' Motion for Reconsideration should be granted. We assume familiarity with the original May 22, 1986 opinion for purposes of the discussion below.

The paragraph which troubles plaintiffs reads as follows:

> As with the stumpage claim, the court views each such harvesting of trees as generating a new cause of action. A duty to replant each stand arguably arose after its harvest and each failure to fulfill that duty gave rise to a separate claim. The court clarifies, however, that *each such claim arose only once, at that point in time after the harvest when accepted forestry standards would dictate replanting.*[8] A plaintiff would then have six years to file suit from the time the duty to replant arose respecting his harvested timber. Thus, in the present case plaintiffs may seek recovery with respect to those stands on which a duty to replant first arose after October 18, 1965. Where a duty arose prior to that date, the claim is time-barred. [*Mitchell*, 10 Cl.Ct. at 77 (emphasis added) (footnote omitted).]

Plaintiffs contend that the underscored clause interprets the Bureau of Indian Affairs' ("BIA" 's) duty to regenerate too narrowly. That language, they argue, incorrectly limits the BIA's obligation to replant after logging to a duty which arises once and only once. Instead, the argument continues, the court should characterize the BIA's duty to replant as a continuing one. This approach, as discussed below, would permit plaintiffs to sue regarding lands whose timber was harvested long ago and never replanted.

Plaintiffs are correct, both in their reading of the court's May 22nd opinion and in their request for its modification. The court is persuaded that the BIA's duty to regenerate is more accurately described as continuing, rather than discrete. We base this conclusion upon a consideration of the governing statute, its legislative history and its implementing regulations.

The statute setting forth the BIA's duty to provide for regeneration defines that duty in broad terms: "The Secretary of the Interior is directed to make rules and regulations for the operation and management of Indian forestry units on the principle of sustained-yield management * * *" 25 U.S.C. § 466 (1982). For the words of its

sponsor, the purpose of this provision is to "assure that the Indian forests will be permanently productive and will yield continuous revenue to the tribes." 78 Cong.Rec. 11,730 (1934) (statement of Rep. Howard).

These sources instruct that the BIA has a duty to maintain each tract of Indian timberland in a state of continuous productivity and to plant whenever necessary to achieve that end. The regulations implementing the statute buttress that conclusion: "The following objectives apply to the management of Indian forest lands * * (c) The regulation of the commercial forest in a manner which will insure method and order in harvesting the tree capital, so as to make possible continuous production and a perpetual forest business." 25 C.F.R. § 163.3 (1986).

Having agreed that the BIA's duty was a continuing one, the court emphasizes that the remainder of its analysis in the May 22nd opinion stands intact. The court still disapproves of the "continuing wrong" approach, which would translate a breach of this continuing duty into a perpetual tolling of the statute of limitations, and allow damages dating back to the first breach of the duty. Instead, as before, the court views any ongoing breach of the continuing duty as creating a series of individual actionable wrongs.

Under our current view, however, the series of alleged regeneration wrongs arose not just as the cutting progressed from stand to stand, but also with respect to each individual tree. That is, the existence of a continuing duty to regenerate means that on each day the BIA failed in its duty to regenerate a given stand, there arose a new cause of action. And those causes of action which arose in the six-year limitations period may be sued upon. Hence, if the BIA allowed a particular tract to remain unproductive for decades, plaintiffs' claim regarding that tract is not forever lost. Rather, plaintiffs can sue for damages stemming from those breaches which occurred in the six years immediately preceding the filing of suit. This approach prevents the BIA from acquiring, in effect, a prescriptive right to ignore those barren tracts harvested long ago, a result

which, plaintiffs correctly observe, would have obtained under our prior ruling.

One final point merits discussion, that being the differing treatment of plaintiffs' stumpage and regeneration claims under the court's present analysis. Because the court now finds that the duty to regenerate is a continuing one, plaintiffs may sue with respect to stands harvested long ago (although their potential recovery is, as stated, limited to the six-year limitations period). By contrast, plaintiffs' stumpage claims pertaining to those same harvests are time-barred. Given that the BIA was under a duty to obtain adequate prices for the timber as well as a duty to regenerate, this result appears inconsistent. Framed another way, the question is why the BIA's alleged failure to obtain fair value for plaintiffs' timber does not give rise to a continuing claim, as does the alleged failure to regenerate.

The answer lies in the nature of the wrong alleged. In the context of a statute that dictates forest management on a sustained-yield basis, the BIA's obligation respecting regeneration is on-going. Sustained yield has been defined in another (but equally relevant) context as "the achievement and maintenance in perpetuity of a high-level annual or regular periodic output of the various renewable resources of the public lands". Federal Land Policy and Management Act of 1976, § 103, 43 U.S.C. § 1702(h) (1982). The duty to replant, in other words, is an ever-present one, rather than one tied to a fixed point in time. Thus, the non-performance of the duty is properly viewed as giving rise to a series of actionable breaches.

The duty to obtain adequate timber prices, by contrast, arises at a specific point in time, namely when the timber is sold. The purported wrong occurs at that moment, and the subsequent failure to make plaintiffs whole is not a continuation of the original wrong, but merely a continuing effect of that wrong. As one court has ruled in the tort context, "[a] continuing tort * * * is occasioned by continual unlawful acts, not by continuing ill effects from an original tort." *Maslauskas v. United States*, 583 F.Supp. 349, 351 (D.Mass.1984); *see also Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C.Cir.1977) (mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong). Hence plaintiffs may not press their stumpage claims concerning timber harvested before 1965, but they may go forward with regeneration claims with respect to those harvests.

Consistent with the foregoing, the court modifies its original opinion by substituting the following for the last paragraph in Part II:

As with the stumpage claim, the court views each such harvesting of trees as generating a new cause of action. A duty to replant each stand arguably arose after its harvest[8] and each failure to fulfill that duty gave rise to a separate claim. Moreover, that duty was a continuing one, and any ongoing failure to fulfill the duty gave rise to an ongoing series of individual claims as to each harvested stand. Thus, in the present case plaintiffs may seek recovery with respect to those stands on which a duty to replant existed after October 18, 1965, regardless of when the BIA last harvested the stand. Plaintiffs may recover, however, for only those breaches occurring between October 18, 1965 and the filing of suit.

---

[8] As noted, plaintiffs contend that by the 1960's a duty to replant automatically arose after each harvest. This is a factual issue, and both parties will have the opportunity to present evidence on accepted forestry practice to determine when, if at all, a duty to replant arose with respect to each stand.

In all other respects, the court's opinion of May 22, 1986 remains unchanged.