Willie Bernard **COLON**, et al., Plaintiffs,

v.

**The UNITED STATES, Defendant.**

**No. 94–63 C.**

United States Court of Federal Claims.

April 5, 1996.

Alberto J. Perez Hernandez, Rio Piedras, Puerto Rico, with whom was Kevin G. Little, for plaintiffs.

Alfred S. Irving, Jr., Washington, D.C., Commercial Litigation Branch, Civil Division, U.S. Department of Justice, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Assistant Director, for defendant. Gerald Elston, United States Marshals Service, was of counsel.

## OPINION

SMITH, Chief Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(4). For the reasons set forth below, the defendant's motion to dismiss for lack of subject matter jurisdiction is hereby granted.

## FACTS

On November 28, 1988, the United States Marshals Service lawfully seized the property known as "La Puesta del Sol," a restaurant located in Puerto Rico. On January 26, 1989, the Marshals Service leased the property to plaintiff, Mr. Willie Bernard Colon, for a period of one year with a provision allowing either party to extend the lease for one additional year by mutual consent.

On March 16, 1990, the parties entered into an agreement extending the lease on a month to month basis. At the time, Mr. Colon was attempting to purchase the property from the Marshals Service. The agreement stated in relevant part that:

> Due to the fact that the United States is selling "The Property" and "Lessee" is taking all necessary steps to buy it, and taking into account the fact that "Lessee" has been operating its business on said "Property" for the last twelve months, therefore:
>
> A. The parties agree to modify the duration of the original contract on a month to month basis, until the perfection of the sale. This modification is made in order to expeditate [sic] the Sale of the Property.

On January 11, 1991, the Marshals Service announced its decision to accept Mr. Rodrigo Rodriguez's offer, as representative of a corporation, to purchase the property. The Marshals Service notified Mr. Colon of the sale on February 6, and informed him that they were terminating the month to month tenancy. Mr. Colon was required to vacate the property by April 1. On February 28, 1991, the deed was filed conveying the property from the United States to a corporation represented by Mr. Rodriguez.

On March 6, 1992, Mr. Colon wrote a letter to the contracting officer, complaining that the sale to the corporation had not been perfected. He asked that the property be returned and the contract restored, with the United States refunding all damages suffered by him and his family. He stated that if he did not hear from the contracting officer within 5 days of receipt of the letter, he would pursue legal remedies. The contracting officer did not reply.

Subsequently, on September 24, 1992, Mr. Colon filed a claim against the United States pursuant to the Federal Tort Claims Act seeking damages for lost future profits, loss of professional reputation, and mental anguish. The United States denied Mr. Colon's administrative tort claim, finding that (1) the action sounded in contract, not in tort and (2) the Marshals Service uncovered no evidence of wrongful acts by government personnel.

Mr. Colon and his wife then filed the present action in the United States Court of

Federal Claims. The complaint alleged that the government breached the lease agreement by terminating the lease "under the false premise that it had perfected the sale of the subject property to a third party." Plaintiffs also asserted that "[i]t was expressly agreed that plaintiffs' month to month tenancy could only be terminated by plaintiffs' purchase of the property." Therefore, plaintiffs contend that the sale of the property to a third party constituted a breach of the lease agreement. Plaintiffs sought $6 million dollars in damages for loss of income, lost capital investment based on reliance on the contract, damages to professional reputation and goodwill, and other consequential damages.

Defendant moved to dismiss the original complaint on two grounds. First, defendant alleges that plaintiffs have failed to meet the requirements of the Contract Disputes Act (CDA) because plaintiffs did not file a valid claim with the contracting officer and failed to certify damages. Second, defendant alleges that plaintiffs' claim sounds in tort, not in contract.

During oral argument on defendant's motion to dismiss, the court noted certain fundamental problems with the merits of plaintiffs' complaint. Most importantly, the court was unclear as to what provision or provisions of the contract plaintiffs were alleging defendant had breached. As a result of these problems, the court stayed determination of the defendant's motion to dismiss and allowed plaintiffs to amend their complaint to address the court's concerns. The court ordered plaintiffs to specify with particularity in the amended complaint what provisions of the contract defendant had breached. Plaintiffs filed an amended complaint [1] and defendant subsequently filed a renewed motion to dismiss the amended complaint.

## DISCUSSION

### I. JURISDICTION

Before this court reaches the merits of the dispute, it must first determine whether it

has subject matter jurisdiction. Defendant has challenged the court's jurisdiction on two separate grounds. First, defendant alleges that plaintiffs have not met the procedural requirements of the CDA. Specifically, defendant alleges that plaintiffs failed to file a "claim" with the contracting officer and that plaintiffs never certified their damages. Second, defendant alleges that plaintiffs' claim sounds in tort, not contract. These jurisdictional issues will be discussed in turn.

When reaching a decision on a motion to dismiss for lack of subject matter jurisdiction, the court must accept the allegations made by the plaintiffs as true and must draw all reasonable inferences in plaintiffs' favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995) (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236–7, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974)). However, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Blaze Construction, Inc. v. United States*, 27 Fed.Cl. 646, 650 (1993) (*quoting Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981)).

### A. The Contract Disputes Act

The CDA vests this court with jurisdiction to hear cases involving "any express or implied contract ... entered into by an executive agency for ... the procurement of property, other than real property in being." 41 U.S.C. § 602(a)(1) (1994). As defendant notes, the CDA requirements apply to lease agreement disputes. *See Forman v. United States*, 767 F.2d 875, 878–9 (Fed.Cir.1985); *Hamza v. United States*, 31 Fed.Cl. 315, 320 (1994).

For this court to have jurisdiction over a claim pursuant to the CDA, the contractor must have submitted a valid claim in writing to the contracting officer, seeking a final decision on the claim. 41 U.S.C. §§ 605, 609 (1994). Although the CDA does not expressly define what constitutes a "valid claim," the Federal Acquisition Regulations (FAR), which implement the CDA, define a claim as:

---

1. In the amended complaint, plaintiffs seek $3' million dollars in damages, half the amount pled

in the original complaint.

a written demand or written assertion ... seeking, as a matter of right, the payment of money in a sum certain, ... or other relief arising under or relating to the contract. A request for payment that is not in dispute when submitted is not a claim under the Act.

48 C.F.R. § 33.201 (1991); *see also Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1573 (Fed. Cir.1995) (evaluating the sufficiency of a claim under the FAR). In addition to filing a valid claim, where a contractor submits a claim for a sum of money in excess of $50,-000, the claim must be certified as accurate and made in good faith. 41 U.S.C. § 605(c) (1988); 48 C.F.R. § 33.201 (1991).[2]

Defendant seeks to dismiss the complaint on the grounds that plaintiffs failed to meet two requirements of the CDA: (1) plaintiffs never submitted a valid claim, and (2) plaintiffs never certified the claim.

### 1. *Submission of a Valid Claim*

In order to be considered a valid claim for purposes of the CDA, the claim must contain details sufficient to enable the contracting officer to adequately consider what is being claimed and the grounds for the claim. *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987). A contractor must also state in the claim a "sum certain" that is in dispute. The sum need not necessarily be explicitly stated in the claim. For example, a contractor can meet this requirement if the amount claimed can easily be determined from other submissions to the contracting officer. *Mendenhall v. United States,* 20 Cl.Ct. 78, 83–4 (1990) (finding that claim for return of all money paid to government under contract was sufficiently certain).

In order for a claim to be proper under the CDA, it must also communicate a desire for a final decision from the contracting officer. *Transamerica Ins. Corp., Inc. v. United States,* 973 F.2d 1572, 1576 (Fed.Cir. 1992); *see also Mingus Constructors, Inc. v. United States,* 812 F.2d 1387 (Fed.Cir.1987). The claim need not contain "magic words"

because "the intent of the 'claim' governs." *Transamerica,* 973 F.2d at 1578. The request for a final decision may be implicit or explicit. *See Hamza,* 31 Fed.Cl. at 322; *see also Transamerica,* 973 F.2d at 1576. The contractor, however, must submit adequate notice of the basis and amount of the claim. *Contract Cleaning,* 811 F.2d at 592.

In support of its argument that plaintiffs failed to file a valid claim, defendant alleges: (1) that plaintiffs failed to submit any demand for damages expressed in a sum certain to the contracting officer; (2) that plaintiffs never identified any specific damages resulting from the alleged breach of contract; and (3) that plaintiffs never expressed any desire for a contracting officer's final decision.

Both parties agree, and the court concurs, that the March 6th letter from Mr. Colon to the contracting officer alone was insufficient to constitute a valid claim for purposes of the CDA. In the letter to the contracting officer, plaintiffs demanded return of the property because they claimed the government had breached the lease extension agreement. The letter contained no specific allegations of resulting losses and no claim for any specific amount of money. Although the property does have a value that could be estimated, plaintiffs also sought damages for injury to their family's reputation and failed to certify the damages. For these reasons, the letter itself does not constitute a valid claim.

Plaintiffs argue that although the letter of March 6th may not have been sufficient in and of itself to constitute a claim, Mr. Colon also filed an administrative tort claim that asked for a specific amount of money. Based on the March 6th letter and the administrative tort claim submission, plaintiffs argue they have met the procedural requirements of the CDA.

Although the administrative tort claim did contain a sum certain ($6 million dollars), defendant argues that even if the court were

**2.** The statutory amount has recently been raised from $50,000 to $100,000. 41 U.S.C. § 605(c) (1994).

to look at both the March 6th letter and the tort claim, the contracting officer would still not have a sufficient basis for reaching a final decision. The damages sought in the tort claim, defendant argues, were for tort injuries, and not for damages allegedly incurred through breach of contract.

The court recognizes that it should look at the totality of the correspondence when determining the validity of a claim. "Several documents as a whole may constitute a valid claim." *Hamza*, 31 Fed.Cl. at 321 (*citing Contract Cleaning*, 811 F.2d at 592). However, the March 6th letter and the subsequent administrative tort claim, read together, simply cannot be considered a valid claim for purposes of the CDA. The CDA valid claim requirement is designed to give the contracting officer enough information to fairly evaluate the claim in order to reach a final decision. Here, the contracting officer could not possibly evaluate the claim. The March 6th letter alleges an unspecified contract breach resulting in unspecified contract damages, while the administrative tort claim provides neither a basis nor an amount upon which a *contract* claim could be premised.

It is theoretically possible that an administrative tort claim could have a breakdown of claimed damages and that some of these damages could in reality be contract-based. A contracting officer may then be in a position to fairly evaluate the claim using information provided in the administrative tort claim. This did not happen here. Instead, Mr. Colon submitted an administrative tort claim which on its face could not provide any guidance to the contracting officer in fairly evaluating the contract claim. This is not sufficient to be considered a valid claim for purposes of the CDA.[3]

### 2. Certification

As noted above, the CDA required the contractor to certify a contract claim in excess of $50,000. 41 U.S.C. § 605(c) (1988). Since plaintiffs seek over $50,000, they must meet the certification requirement. Defen-

dant alleges that plaintiffs failed to certify their claims.

Plaintiffs argue that the purpose of this requirement is to discourage the filing of fraudulent claims and that the requirement was met by signing and submitting the administrative tort claim. Above the signature, the tort claim stated:

I certify that the amount of the claim covers only damages and injuries caused by the accident above . . .

The amount requested in the administrative tort claim was, at least in major part, for tort damages. Pursuant to the CDA, the contractor must certify that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable. 41 U.S.C. § 605(c)(1) (1994). The amount requested in the tort claim cannot accurately reflect the amount of damages based solely on the contract since it is based on theories of negligence and misrepresentation. Therefore, the certification in the tort claim cannot meet the requirements of the CDA.

This court recognizes that it may allow contractors to amend minor defects in certification. 41 U.S.C. § 605(c)(6) (1994). As the *Hamza* court noted, Congress sought to "allow contractors to cure 'technically defective' certifications—defective as a result of innocent mistake—in order 'to avoid repetition of the entire administrative claims process and waste of judicial . . . resources.'" *Hamza*, 31 Fed.Cl. at 323 (quoting H.Rep. No. 102–1006, 102d Cong., 2d Sess. 28, *reprinted in* 1992 U.S.C.C.A.N. 3921, 3937). However, because plaintiffs' claim fails to meet the requirement that a "valid claim" be submitted, as discussed above, the court need not resolve whether plaintiffs' certification is only technically defective.

### B. Tort v. Contract

Defendant also argues that this court lacks jurisdiction to hear plaintiffs' claim because it sounds in tort rather than contract. The Tucker Act specifically ex-

---

**3.** The court need not reach defendant's argument that neither the March 6th letter nor the administrative tort claim requested a final decision from the contracting officer as required under the CDA.

cludes from this court's jurisdiction claims sounding in tort. *See* 28 U.S.C. § 1491(a)(1) (1994). This includes cases involving negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed. *See Aetna Casualty & Surety Co. v. United States,* 228 Ct.Cl. 146, 164, 655 F.2d 1047 (1981) (*citing Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 749, 508 F.2d 817 (1974)); *see also United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

In the instant case, defendant argues that neither the complaint nor the amended complaint identified a specific contractual provision that defendant allegedly violated. Since plaintiffs failed to allege a breach of the written contact, defendant argues, plaintiffs' complaint is based on claims of misrepresentation and thus should be dismissed. In support of its argument, defendant points to the fact that plaintiffs made the same allegations in their tort claim.

Plaintiffs contend that their claim does involve a contract dispute. They allege that defendant breached two provisions of the lease agreement. First, they argue that defendant breached the lease extension agreement when it sold the property to a third party. Second, plaintiffs claim that defendant breached the lease agreement when it unilaterally terminated the lease on February 6, 1991, prior to perfection of the sale.

The court is certainly mindful that the mere labeling of a claim as one sounding in contract does not make it a contract claim. "The fact that plaintiffs do not label their claim as one sounding in tort is irrelevant." *Adams v. United States,* 20 Cl.Ct. 132, 135 (1990). An otherwise tort-based claim is not suddenly converted into a contract based claim by calling it a breach of contract. Rather, the court has a duty to determine whether an alleged contract claim actually sounds in tort. *See Morris v. United States,* 33 Fed.Cl. 733, 742 (1995); *Dakota Tribal Industries v. United States,* 34 Fed.Cl. 295, 297 (1995). If is sounds in tort exclusively, this court is without jurisdiction to entertain the claim. In this case, however, plaintiffs' amended complaint is premised on specific provisions of the contract. The fact that plaintiffs filed an administrative tort claim, and that they asserted other tort-based theories before other forums, is irrelevant to whether this complaint is premised upon the contract between Mr. Colon and the Marshals Service. Plaintiffs have pointed to specific provisions in the contract that they claim the government breached. It appears, then, that the real issue is whether plaintiffs' allegations—that the government has breached express provisions of its contract with Mr. Colon—are meritorious. Defendant's argument then really is whether plaintiffs have failed to state a claim upon which relief can be granted.

## II. THE MERITS

Even were the court to have subject matter jurisdiction to entertain this claim, the court is convinced that plaintiffs' complaint, as pled, fails to state a claim upon which relief can be granted, because the lease agreement on its face does not grant to plaintiffs an option or right of first refusal to purchase the property.

Plaintiffs point to two specific breaches of the terms of the extension agreement. First, plaintiffs allege that defendant breached the lease agreement by selling the property to a third party. In support of this argument, plaintiffs rely on use of the term "*the* Sale of the Property" in the lease agreement. (emphasis added). They argue that the parties specifically did not refer to "a sale" because both parties had agreed that the purchaser would be the plaintiffs. If defendant had a right to sell to a third party, the contract would have used the word "a." Plaintiffs also point to language in the contract recognizing that Mr. Colon was "taking all necessary steps to buy [the subject property]." Based on this language, plaintiffs argue that defendant agreed that it could only terminate the month to month tenancy by selling the property to plaintiffs. Although plaintiffs concede that the court may find other reasonable interpretations of the contract terms, they argue that they should be allowed to clarify any ambiguities in the contract terms by reference to extrinsic evidence.

■ Second, plaintiffs argue that the lease was to continue until "the perfection of the sale" of the property. Under Puerto Rican law, the deed must be filed with the appropriate government agency in order to perfect the sale. Since neither party in this case had evidence showing that Mr. Rodriguez filed the appropriate documents, plaintiffs argue that the sale has not been perfected. Therefore, plaintiffs argue, the sale was never technically perfected and defendant breached the contract when they wrongfully terminated the lease.

■ On its face, the lease agreement's clear and unambiguous wording did not require defendant to sell the property to plaintiffs. The extension agreement contained no option or right of first refusal protecting plaintiffs' right to purchase the property. The actual wording of the lease extension agreement makes no mention of a requirement limiting defendant's right to sell the property to a party other than the plaintiffs. The lease states in relevant part:

> The parties agree to modify the duration of the original contract on a month to month basis, until the perfection of the sale. This modification is made in order to expeditate [sic] the Sale of the Property.

■ Contract interpretation is a question of law to be decided by the court. *Flathead Joint Brd. of Control v. United States*, 30 Fed.Cl. 287, 294 (1993); *see also P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed.Cir.1984). Reading the plain language of the contract, the court fails to see any express or implied agreement between the parties that would require defendant to sell the property only to plaintiff. The extension agreement simply extends the prior lease and modifies it to apply month to month. Nowhere does it state or reasonably imply that plaintiff has a right to purchase the property.

Plaintiffs' focus on the word "the" as an indication of ambiguity is unpersuasive when read in the context of the full lease agreement. As defendant notes, if it intended to sell the property *only* to plaintiffs, it would have had no need for a month to month tenancy. Plaintiffs would have possession of the property and could terminate the lease upon sale. Defendant, however, needed a month to month tenancy in order to improve the marketability of the property because defendant would have had difficulty selling property to a third party that was subject to a long-term lease.

Plaintiffs may have expressed an intention to purchase the property. The lease extension agreement, however, contained no purchase contract, option, right of first refusal or other provisions protecting plaintiffs' right to purchase the property. Plaintiffs' intention alone does not translate into a right to purchase. Therefore, based on a plain reading of the lease, defendant could not have breached the contract by selling to a third party.

■ Plaintiffs' "perfection" argument also lacks merit. It may be true that the property's new owner has failed to file the deed with the appropriate authorities in Puerto Rico. The defendant however, has given up control and possession of the property and has received full value for the sale. The new owner is currently occupying and using the property. The sale has been completed and defendant has done all in its power to complete perfection of the sale. The filing of the deed by the new owner is purely a ministerial action and should not prohibit the defendant from terminating the lease and proceeding with the sale. The filing of the deed seems to be a minor defect that should not give plaintiffs the right to remain in possession of the property. Therefore, the fact that the purchaser paid for, took possession of and is currently using the property satisfies the perfection requirement, assuming this provision was even meant to confer rights upon the plaintiffs. No amount of additional discovery would alter this conclusion.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

**IT IS SO ORDERED.**