**Myron C. SIMMONS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 04–1759L.

United States Court of Federal Claims.

April 25, 2006.

Myron C. Simmons, pro se, Forks, Washington.

Sara E. Culley, with whom was Thomas L. Sansonetti, Assistant Attorney General, United States Department of Justice, Washington, D.C. Richard A. De Clerck, United States Department of the Interior, Portland, Oregon, of counsel.

## OPINION AND ORDER

SMITH, Senior Judge.

After an unfavorable judgment in the United States District Court for the Western District of Washington, Myron C. Simmons brings this *pro se* complaint alleging negligence on the part of the Bureau of Indian Affairs ("BIA") in managing his trust property, violations of 42 U.S.C. § 1983, and various tort claims. The Government has filed a motion to dismiss under Rule of the Court of Federal Claims ("RCFC") 12(b)(1) or, in the alternative, for summary judgment under RCFC 56. For the reasons set forth below, the Court hereby **GRANTS** the Government's Motion to Dismiss pursuant to RCFC 12(b)(1) and **DENIES** the Plaintiff's Cross-Motion for Judgment. Because the Court dismisses this case for lack of subject-matter jurisdiction, it does not address the Government's alternative motion for summary judg-

ment, affirmative defenses, nor the merits of the Plaintiff's claims.

## BACKGROUND [1]

Myron C. Simmons, a tribal elder of the Quinault Indian Nation, has two 40–acre allotments on the Quinault Reservation, one of which is at issue in this case ("subject allotment"). Adjacent to the subject allotment on the north is the Gladys Lomsdalen Allotment, and adjacent on the east is the Old Man Gray Allotment. Although the dates are not certain, timber was harvested from the Lomsdalen Allotment in or about 1973, or perhaps as late as 1975. The surveying of the Lomsdalen Allotment incorrectly placed the corner markers of that property eighty- · four feet south of the true corners. As a result, when the entities harvesting the Lomsdalen Allotment harvested trees all the way to the corner markers, they harvested trees from an eighty-four foot by one-quarter mile section of the subject allotment as well.

There was also timber harvested from the Old Man Gray Allotment at some time prior to 1977. While the date the harvesting took place is uncertain, it is not disputed that all logging at issue in this case was done during or before 1977. In 1977, an acquaintance of Simmons informed him of a logging road that had been built across the subject allotment, for which Simmons had not given permission. The road was built by the entities logging the Old Man Gray Allotment, and ran south of the improper corner markers, therefore it clearly crossed the subject allotment. Simmons states that, at the time, he "had reason to be suspicious that timber might have been taken illegally from one of his 40–acre parcels." Compl. p. 9, ¶ V.1.[2] Simmons states, however, that there was no way that he could be certain at that time that lumber had been taken. *Id.* On November 16, 1977, Simmons wrote a letter expressing these concerns to the BIA Superintendent in Everett, Wash-

1. The facts set forth in this section are compiled from the complaint in this case, the complaint filed in the District Court for the Western District of Washington (Exhibit 1 to the Government's Motion to Dismiss), that court's Order Granting Summary Judgment (Ex. 5 to the Government's Motion), and the Plaintiff's Cross–Motion for

Judgment and the exhibits thereto. These facts are not disputed.

2. Plaintiff numbers the pages of the Complaint consecutively, but the paragraphs are not so numbered. The Court is supplying both to ensure that accurate citation is possible.

ington. In response, the Superintendent—Peter Three Stars—wrote Simmons that the BIA would investigate his concerns. According to Simmons, this never took place with regard to the harvesting of trees all the way to the corner markers that he suspected were improperly placed, but the BIA did investigate the logging road. According to the Plaintiff, this investigation was "halfhearted at best." Pl. Cross–Mot. at p. 18–19. However, Plaintiff states that the BIA identified two trespassers and he accepted a nominal settlement from one of them in 1981. There was no settlement with the other road trespasser, and finally Simmons was told that the statute of limitations had run on any possible recovery.

In 1986, allegedly due to his frustration dealing with the BIA, Plaintiff suffered a heart attack. His heart condition continued and led to open-heart surgery in 1997. As a result, he is on medications for life.

At some point in 1994, Plaintiff decided that he wanted to harvest timber on the subject allotment and applied to the BIA for a permit. The BIA required the Plaintiff to provide information before it would issue him a permit. First, the BIA required the Plaintiff to pay for a survey to determine whether the existing markers were, in fact, "true corners." Second, the BIA required a recorded copy of the survey. Third, because access to the subject allotment required Plaintiff to cross non-Indian land, the BIA required Plaintiff to get written consent to cross that land, and, if necessary, to pay the landowners for crossing their land. The Plaintiff's survey was performed in November 1997 and showed that the corners established for the harvesting of the Lomsdalen Allotment were, in fact, eighty-four feet south of the "true corner." This showed that the 1973 harvesting all the way to those markers caused trees to be taken from an eighty-four by one-quarter mile section of the subject allotment. Plaintiff made the trespass known to the BIA in a letter dated November 24, 1997.

Subsequent to his 1997 letter notifying the BIA of the trespass, Plaintiff has consistently been seeking to recover for the harvesting of lumber from the subject allotment. He has also pursued administrative remedies through appeals to the BIA. On September 22, 2003, Plaintiff filed a claim under the Federal Tort Claims Act in the United States District Court for the Western District of Washington. That court granted the Government summary judgment and dismissed the case with prejudice, "except without prejudice as jurisdiction may exist in the Court of Claims under 28 U.S.C. § 1505." Def. Mot. Ex. 5 at 5.

Plaintiff then filed his complaint *pro se* in this court on December 7, 2004. Plaintiff brings three counts, seeking to recover for alleged: 1) negligence of the Defendant in protecting his trust land; 2) violations of 42 U.S.C. § 1983; and 3) loss of consortium. In his prayer for relief, Plaintiff seeks treble damages for the value of the harvested timber totaling $108,000 plus interest "compounded daily at 12% [from] January 1, 1997 to date," totaling $50,652, and $250,000 for "needless emotional pain and suffering," and costs. Compl. p. 6 ¶¶ 1–4. The Government then moved to dismiss this action on numerous grounds, including lack of subject-matter jurisdiction.

## DISCUSSION

### I. Standard of Review for Motions Filed Under RCFC 12(b)(1)

"A party seeking the exercise of jurisdiction has the burden of establishing that such jurisdiction exists." *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991) (citing *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936)). The Court must "accept the allegations made by the plaintiff[ ] as true and must draw all reasonable inferences in plaintiff['s] favor." *Colon v. United States*, 35 Fed.Cl. 337, 340 (1996) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995)). Further, when dealing with a *pro se* plaintiff, the Court must afford the complaint a more liberal reading than one filed by counsel. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). "However, 'conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss.'" *Colon*, 35 Fed.Cl. at 340 (citations omitted). While the burden is on the

Plaintiff to establish jurisdiction, if "the facts reveal any possible basis on which the non-movant may prevail, the motion must be denied." *Gajic–Stajic v. United States,* 36 Fed.Cl. 422, 423 (1996) (citation omitted).

## II. Jurisdiction

Plaintiff asserts that this Court has jurisdiction under 28 U.S.C. § 1491 (2000), 28 U.S.C. § 1505 (2000), and 28 U.S.C. § 2674 (2000). The Government challenges the jurisdiction of the Court on several grounds. The Government is correct that 28 U.S.C. § 1505 does not apply in this case because Section 1505 applies only to claims brought by "any tribe, band, or other identifiable group of American Indians." However, Section 1505 is "not applicable to actions brought by individual Indians." *Grey v. United States,* 21 Cl.Ct. 285, 292 n. 7 (1990) (citing *Fields v. United States,* 191 Ct.Cl. 191, 423 F.2d 380 (1970)). Although the Government does not directly challenge the assertion of 28 U.S.C. § 2674, that section refers to tort claims against the Government. As 28 U.S.C. § 1346(a)(1) (2000) makes clear, the district courts have exclusive jurisdiction over those claims. *See also* 28 U.S.C. § 1491(a)(1) (2000) (granting this Court jurisdiction over claims "not sounding in tort"). Therefore, if jurisdiction exists, it must exist under 28 U.S.C. § 1491.

### A. Statute of Limitations

The Government challenges the Court's jurisdiction based on the passage of time since the facts underlying the complaint occurred. The statute of limitations generally applicable to actions in this Court states, in relevant part, that: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2000). This statute is not subject to waiver or estoppel because it constitutes a limitation on Congress's waiver of sovereign immunity. *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed.Cir.

1988); *Cavin v. United States,* 19 Cl.Ct. 190, 194–96 (1989). Because it limits the waiver of sovereign immunity, the statute limits the jurisdiction of this Court. *Hopland Band,* 855 F.2d at 1576–77. Therefore, it must be construed strictly, and exceptions to the limitation "are not to be implied." *Id.* (quoting *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)); *Tabbee v. United States,* 30 Fed.Cl. 1, 4 (1993) (citations omitted).

In this case, the Court must determine when the claim first accrued in order to decide whether it is barred or not. For the purposes of the statute, a claim "first accrues" when the events forming the basis of the alleged breach have taken place. *Nager Electric Co. v. United States,* 368 F.2d 847, 851 (Ct.Cl.1966). The plaintiff is not required to know all of the facts, or of the cause of action, before the statute begins to run. *Fallini v. United States,* 56 F.3d 1378, 1380 (Fed.Cir.1995); *Mitchell v. United States,* 10 Cl.Ct. 63, 68 (1986), *rev'd in part on other grounds on reconsideration* 10 Cl. Ct. 787 (1986). Further, " '[w]hatever is notice enough to excite attention and put the party on his guard and call for inquiry is [also] notice of everything to which such inquiry might have led.' " *Id.* (quoting *Wood v. Carpenter,* 101 U.S. (11 Otto) 135, 141, 25 L.Ed. 807 (1879)) (citation omitted) (alterations in original). Once the operative facts have transpired, there could be a tolling of the statute if those facts were inherently unknowable or there was an attempt by the Government to conceal the operative facts.[3] *Menominee Tribe v. United States,* 726 F.2d 718, 720–22 (Fed.Cir.1988).

The parties do not dispute that none of the logging or road construction took place after 1977. Therefore, it is clear that the events creating a possible cause of action against the Government for not preventing the trespass clearly transpired in or before 1977. The Court does not find that the fact that timber was taken from, and a road constructed

---

3. Another exception, not at issue in this case, exists for Congressional Reference Cases. In these cases, either House of Congress may refer a matter to this Court "to determine the facts, including facts relating to delay or laches, facts bearing upon the question whether the bar of any statute of limitations should be removed, or facts claimed to excuse the claimant for not having resorted to any established legal remedy." 28 U.S.C. § 2509(c) (2000).

across, Plaintiff's land was "inherently unknowable" in 1977. Indeed, Plaintiff was aware of the road trespass and worked with the Government to reach a settlement with one of the trespassers. Pl. Cross–Mot. at 26. No facts learned after 1977 were relevant to determining that the road traversed the subject allotment. With regard to the taking of the lumber, the Plaintiff states simply that there was no way for him to be sure in 1977 that the trees had been taken from his property. Pl. Cross–Mot. at 26; *see also id.* at 19. These statements, however, appear to be nothing more than conclusory statements by the Plaintiff. Indeed, Plaintiff had no problem discovering the trespass in 1997 when he hired the surveyor. There is no indication that Plaintiff could not have taken this same action in 1977.

The second part of Plaintiff's claim, that the Government failed to pursue the trespassers, also accrued in 1977, or perhaps in the time immediately thereafter. It appears clear from the record that the Government did not actively pursue the claim, and that Plaintiff knew it. Plaintiff states that:

> When Simmons discovered the road trespass across his land in 1977 the BIA participation in seeking resolution can be seen as half hearted at best. Simmons has every reason to believe that the BIA would have dropped that trespass if he had not continually pressed them. In no instance was it evident that they were willingly working in his best interest. On two occasions the BIA simply abandoned him until Judge Lamberth intervened.[4]

Pl. Cross–Mot. at 18–19. There is no evidence or allegation that the Government attempted to cover up any facts in this case. Indeed, the Plaintiff frames his entire complaint in terms of the Government failing to act at all. *E.g.* Compl. at 2. The only time that the Plaintiff refers to covering up, he refers to the fact that the false corners used for the logging were not accurate, but relying on them the trespass was not discovered. Pl. Cross–Mot. at 26. This is not the type of concealment that would toll the statute of limitations.

Plaintiff argues that "[u]nder the provisions of the continuing tort doctrine the plaintiff clearly has standing, because this complaint was filed in a timely fashion before a competent court having jurisdiction." Pl. Cross–Mot. at 4. The Plaintiff does not point to, nor can the Court find, any congressional waiver or precedent that would allow the continuing tort doctrine to extend the time limitation of 28 U.S.C. § 2501. As noted above, exceptions to Section 2501 are not to be implied. Allowing the continuing tort doctrine to apply in a Court that is barred from hearing tort claims, *see infra* II.C, would create an anomalous situation that Congress could not have intended. Further, there is no fact that shows a "continuing tort" here. Therefore, the continuing tort doctrine cannot serve to extend the time limitation for actions in this Court.

■ It is possible to construe Plaintiff's argument as asserting that the continuing claim doctrine should toll the statute. The continuing claims doctrine applies when a "defendant owes a continuing duty, [and] a new cause of action arises each time the government breaches that duty." *Plaintiffs in Winstar–Related Cases v. United States,* 37 Fed.Cl. 174, 189 (1997) (quoting *Cherokee Nation of Oklahoma v. United States,* 26 Cl.Ct. 798, 803 (1992)). Under the doctrine, so long as one of the breaches falls within the statute of limitations period, then the plaintiff can bring the suit for all of the breaches. *Id.* However, the doctrine does not apply when there are not multiple events. As the Federal Circuit explained, the claim "must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1456 (Fed.Cir.1997). The *Brown Park* Court continued that "a claim upon a single distinct event, which may have continued ill effects later on, is not a continuing claim." *Id.* Neither the failure to protect against the

---

4. On at least two occasions, Plaintiff contacted the Honorable Royce C. Lamberth of the United States District Court for the District of Columbia seeking assistance in getting a response from the Government regarding these claims. Pl. Cross–Mot. Ex. 12 & Ex. 16.

trespass, nor the failure to prosecute the trespass, occurred within the limitation period. Therefore, the continuing claim doctrine does not toll the statute in this case.

The Plaintiff's next argument is essentially that he was directed to the wrong court by a Government employee, who denied Plaintiff's claim for damages. Pl. Cross–Mot. Ex. 24. This argument is essentially an estoppel argument, claiming that the Government led him to file in the wrong court. Plaintiff further argues that the Western District did not resolve this matter. Pl. Cross–Mot. at 39. The Court must reject these arguments. As stated above, the statute of limitations is not subject to estoppel arguments and can not be waived by an individual Government official. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 424–29, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).

 The Plaintiff's final argument is that if the statute of limitations has run on his claims, then the Indian Trust Accounting Statute, Pub.L. No. 108–108 (Nov. 10, 2004), resurrects his claim. The Statute states that:

[N]otwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim, including any claim in litigation pending on the date of the enactment of this Act, concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss.

Pub.L. No. 108–108, 117 Stat. 1241, 1263 (Nov. 10, 2003). The Federal Circuit has held that the Indian Trust Accounting Statute ("ITAS") "displaces" Section 2501 and can resurrect otherwise barred claims. *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339, 1345–48 (Fed.Cir.2004). The Government argues that the ITAS only applies to a limited class of cases, and this is not one of them. As *Shoshone* found, the text of the ITAS specifically limits its application to the "mismanagement of trust *funds.*" 117 Stat. at 1263 (emphasis added). This case, however, deals with the alleged mismanagement of trust *assets.* Were this the first case on the issue,

perhaps there could be an argument that the ITAS should apply here as well. In *Shoshone*, however, the Circuit held that:

The [ITAS] covers claims concerning "losses to . . . trust funds" rather than losses to mineral trust assets. While it is true that a failure to obtain a maximum benefit from a mineral asset is an example of an action that will result in a loss to the trust, the Act's language does not on its face apply to claims involving trust assets. The Court of Federal Claims therefore erred in equating the mismanagement of trust assets with "losses to . . . trust funds."

*Shoshone,* 364 F.3d at 1350 (omissions in original). Therefore, the Court is bound by the determination that the ITAS does not apply to this case.

Because none of the Plaintiff's claims accrued within six years and there is no ground to toll or displace the running of Section 2501, the Court must conclude that this complaint is time barred. Because it is time barred, the Court must dismiss it for lack of subject-matter jurisdiction.

**B. Even if Plaintiff's Complaint Were Timely, the Court Lacks Subject–Matter Jurisdiction Over Plaintiff's 42 U.S.C. § 1983 Claim**

 Plaintiff alleges a violation of 42 U.S.C. § 1983 (2000), claiming that agents of the United States violated Section 1983 by "fail[ing] to protect the plaintiff's interest in his trust property and did use their office to thwart his efforts to remedy theft of his property." Compl. p. 5. The Government argues that jurisdiction to hear claims under Section 1983 is limited to the district courts. The Government is correct that this Court lacks jurisdiction to hear claims under 42 U.S.C. § 1983. *E.g., Blassingame v. United States,* 33 Fed.Cl. 504, 505 (1995); *Montoya v. United States,* 22 Cl.Ct. 568, 571 (1991). Jurisdiction for Section 1983 claims is conferred by 28 U.S.C. § 1343(a)(4) (2000), which grants *district courts* jurisdiction to hear Section 1983 claims. *Blassingame,* 33 Fed.Cl. at 505. There is no similar grant of jurisdiction to this Court, which would be required because this Court is not a district court. Therefore, even if the statute of limi-

tations were not a bar to this case, the Court would be forced to dismiss Plaintiff's claim under Section 1983 for lack of subject-matter jurisdiction.

## C. Even if Plaintiff's Complaint Were Timely, the Court Lacks Subject–Matter Jurisdiction Over Plaintiff's Tort Claims

The Plaintiff also seeks recovery for various tort damages he claims were caused by his interactions with the Government, claiming that this Court "was designed in part to insure people like me have a legal right to bring tort claims before the court." Pl.'s Cross–Mot. at 2. Although he titles Count III "Loss of Consortium," it includes claims of "mental anguish, loss of consortium, . . . [and] a loss of the enjoyment of life." Compl. p. 5. While not necessarily pleaded as such, it appears that part of Plaintiff's claim under Section 1983 also encompasses tort claims for "undue stress, which resulted in much pain and suffering and was the proximate cause of his heart attack." *Id.* Further, in his prayer for recovery, Plaintiff states that "punitive damages have not been calculated thus far." Compl. p. 7. The Government challenges the Court's jurisdiction over tort claims. The Court agrees that it has no jurisdiction over the tort claims advanced by the Plaintiff. Under the Tucker Act, this Court has jurisdiction over cases "not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). Therefore, the Court must also dismiss the Plaintiff's tort claims for lack of subject-matter jurisdiction.

## CONCLUSION

The Plaintiff here presents some sympathetic facts. He well may have suffered an injury. The Court has "strained [its] proper role in adversary proceedings to the limit, searching this lengthy record to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct. Cl. 456, 468, 412 F.2d 1285 (1969). The Court finds that it lacks jurisdiction over each of the Plaintiff's claims for several reasons and must dismiss the complaint. Therefore, the Court hereby **GRANTS** the Government's Motion to Dismiss pursuant to RCFC 12(b)(1), **DENIES** Plaintiff's Cross–

Motion for Judgment, and directs the Clerk's Office to **DISMISS** this case with prejudice. Further, the Plaintiff's Motion for Additional Clarification, filed March 3, 2006, is hereby **DENIED AS MOOT.**

It is so **ORDERED.**