Leo F. **SCHWEITZER, III**, and Richard S. **Dalberth, Plaintiffs,**

v.

The **UNITED STATES, Defendant.**

No. 08–497C.

United States Court of Federal Claims.

July 18, 2008.

Leo F. Schweitzer, Waymart, PA, Pro Se plaintiff.

## ORDER OF DISMISSAL

FIRESTONE, Judge.

Pending before the court is the complaint of *pro se* plaintiffs Leo F. Schweitzer, III, and Richard S. Dalberth ("plaintiffs"),[1] filed July 9, 2008.[2,3] The plaintiffs seek to bring the suit as a class action, challenging the following alleged practices of the defendant, the United States ("defendant" or "government"): "[o]vert and improper techniques to induce plea agreements," "[ma]nipulation and structuring of facts to produce and perfect a pleth[o]ra of structured confessional stipulations resulting in factual guilt without the requirement of proving mens rea," "Defense Counsel encouraged to practice policies of 'Fee & Plea' and 'Innocent Until Proven Broke' to circumvent Sixth Amendment Pro-

---

1. Mr. Schweitzer is presently incarcerated at Federal Prison Camp ("FPC") Canaan in Waymart, Pennsylvania. Mr. Dalberth's whereabouts are not clear from the complaint. In the documents submitted to the court, Mr. Dalberth's name is signed "/s/ For Richard Dalberth" and initialed by Mr. Schweitzer.

2. The plaintiffs also submitted an Application to Proceed *In Forma Pauperis*. For the limited purpose of filing their complaint only, the plaintiffs' application is **GRANTED**. Accordingly, the Clerk is directed to file the complaint with no filing fee.

3. On December 5, 2008, this court dismissed an earlier complaint filed by Mr. Schweitzer for lack of jurisdiction under 28 U.S.C. § 1500 (2000), because he had a suit pending against the United States in the United States District Court

for the Middle District of Pennsylvania stating the same claims in respect to which he had filed the complaint in this court. *See Schweitzer v. United States*, No. 07–791C (dismissed Dec. 5, 2008); *see also Schweitzer v. United States*, No. 3:07–cv–01895–EMK–LQ (filed in M.D. Pa. Oct. 18, 2007; transferred to E.D. Pa. Apr. 14, 2008). Though the present submission by Mr. Schweitzer restates many of the facts and allegations contained in his earlier complaint, the present submission is framed as a class action regarding the use of plea agreements in criminal proceedings, in contrast to his earlier complaint, which focused on numerous torts and constitutional violations alleged to have arisen from Mr. Schweitzer's involvement with the criminal justice system more generally.

tections," as well as "[c]onscious and intentional targeting" of First, Fourth, Fifth, Sixth, Ninth, and Tenth Amendment protections. Compl. C9–10 (emphasis in original). The plaintiffs further contend that "[t]hrough its policies, procedures and m[a]nipulative practices the government breaches its agreements."[4] *Id.* at C 11. The plaintiffs seek $20 billion in compensatory damages. *Id.* at 64.

The complaint lists numerous bases for jurisdiction over "[t]his action for money damages," including the following: Article III, Section 1 and the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments to the United States Constitution; 28 U.S.C. § 2671 (the Federal Tort Claims Act); 42 U.S.C. §§ 1983, 1985(3), 1986 & 1988; "Bivens Action"; 28 U.S.C. §§ 1331, 1332, 1343, 1651 & 2201; 31 U.S.C. §§ 3729–3733 (the False Claims Act); 5 U.S.C. § 701 (the Administrative Procedures Act); 18 U.S.C. §§ 2 & 1385; "all corresponding State Law and Constitutional equi[vale]nt laws, statutes, and Common Law Causes of Action"; and "Breach of Contract & its Individual Damage Theories." Compl. C3, ¶¶ 016–018. The plaintiffs also list 28 U.S.C. § 1346(b) as a basis for jurisdiction. Compl. ¶ 018.

Because the plaintiffs are proceeding *pro se*, they are entitled to a liberal construction of their pleadings. *See, e.g., Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (holding that *pro se* complaints should be held to "less stringent standards than formal pleadings drafted by lawyers" (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972))); *McSheffrey v. United States*, 58 Fed.Cl. 21, 25 (2003). However, *pro se* plaintiffs must still satisfy the court's jurisdictional requirements. *Bernard v. United States*, 59 Fed.Cl. 497, 499 (2004) ("This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements."),

*aff'd*, 98 Fed.Appx. 860 (Fed.Cir.2004), *reh'g denied* (May 5, 2004).

The court may address jurisdictional issues *sua sponte* at any stage in the proceedings. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1353 (Fed.Cir. 2006) (citing *Consolidation Coal Co. v. United States*, 351 F.3d 1374, 1378 (Fed.Cir. 2003)), *aff'd*, —— U.S. ——, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); *Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed.Cir. 1988) ("A court may and should raise the question of its jurisdiction *sua sponte* at any time it appears in doubt."). Indeed, "courts *must always* look to their jurisdiction, whether the parties raise the issue or not." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed.Cir.1997) (emphasis added); *Salmon Spawning & Recovery Alliance v. United States*, 532 F.3d 1338, 1351 n. 12, 2008 WL 2736031, at *8 (Fed.Cir.2008) ("Courts have an independent obligation to determine their own jurisdiction." (citing *Dowd v. United States*, 713 F.2d 720, 726 (Fed.Cir.1983) ("Lack of jurisdiction may not be waived by the parties nor ignored by the court."))). Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") requires that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Under RCFC 8(a)(1), a complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

4. The plaintiffs argue that "[t]he breaches complained upon are widespread and in continuous active use in every federal circuit." Compl. ¶ 217. They indicate that the class would consist of those who "have entered an agreement with the United States and have not received the benefits of [their] agreement." *Id.* at C35. The com-

plaint includes specific facts related to Mr. Schweitzer's experiences with the criminal justice system only, however, *see id.* at ¶¶ 060–216, and the plaintiffs note that any additional plaintiffs, including Mr. Dalberth, will file their individual facts and lists of defendants under separate cover. *Id.* at 11.

will not do." *Bell Atl. Corp. v. Twombly,* —— U.S. ——, —— – ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (quoting Fed. R.Civ.P. 8(a)(2)).

The Court of Federal Claims is a court of limited jurisdiction, *Jentoft v. United States,* 450 F.3d 1342, 1349 (Fed.Cir.2006) (citing *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), and under the Tucker Act, 28 U.S.C. § 1491 (2000), may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act simply confers jurisdiction on this court; a plaintiff must also identify a separate money-mandating statute upon which to base a claim for damages. *In re United States,* 463 F.3d 1328, 1333 (Fed.Cir. 2006) ("[A] Tucker Act plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." (citing *Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir.2004))). "[A] statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (quoting *United States v. Mitchell,* 463 U.S. 206, 217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). "Where plaintiffs have invoked a money-mandating statute and have made a non-frivolous assertion that they are entitled to relief under the statute, ... the Court of Federal Claims has subject-matter jurisdiction over the case." *Brodowy v. United States,* 482 F.3d 1370, 1375 (Fed.Cir.2007).

As discussed below, despite the laundry list of purported sources of jurisdiction in the complaint, the plaintiffs have failed to establish any basis for jurisdiction in the Court of Federal Claims, and therefore their complaint must be dismissed.

First, to the extent that the plaintiffs bring their claims under the Federal Tort Claims Act, *see, e.g.,* Compl. ¶¶ 022–025, 221–25, this court does not have jurisdiction over the case, because "[c]laims that sound in tort are expressly excluded from the jurisdiction of this court." *Matthews v. United States,* 72 Fed.Cl. 274, 279 (2006) ("The Federal Tort Claims Act cannot provide a basis for jurisdiction in this court ... because any claims brought pursuant to the Federal Tort Claims Act invariably sound in tort." (citing 28 U.S.C. § 1491(a)(1))). For the same reason, this court does not have jurisdiction over the plaintiffs' claims of malicious prosecution, Compl. ¶¶ 233–34, civil and common law conspiracy, *id.* at ¶¶ 235–36, 245–47, intentional infliction of emotional distress, *id.* at ¶¶ 237–38, fraudulent misrepresentation, *id.* at ¶¶ 248–49, common law fraud, *id.* at ¶¶ 250–51, or false imprisonment, *id.* at ¶¶ 260–61, because those claims all sound in tort. *See* 28 U.S.C. § 1491(a)(1). In addition, 28 U.S.C. § 1346(b) (2000), cited by the plaintiffs as a basis for jurisdiction in this court, gives the federal district courts exclusive jurisdiction over tort actions against the United States, precluding this court's jurisdiction over such claims. 28 U.S.C. § 1346(b)(1).

Likewise, this court does not have jurisdiction over the plaintiffs' civil rights claims brought under 42 U.S.C. §§ 1983, 1985 or 1986 (2000), because it is well-settled that jurisdiction over such claims lies exclusively in the district courts. *See, e.g., Stamps v. United States,* 73 Fed.Cl. 603, 609–10 (2006) (citing *Anderson v. United States,* 22 Cl.Ct. 178, 179 (1990), *aff'd,* 937 F.2d 623 (Fed.Cir.1991)); *Simmons v. United States,* 71 Fed.Cl. 188, 193–94 (2006) (citing 28 U.S.C. § 1343(a)(4) (2000); *Blassingame v. United States,* 33 Fed.Cl. 504, 505 (1995); *Montoya v. United States,* 22 Cl.Ct. 568, 571 (1991)); *Marlin v. United States,* 63 Fed.Cl. 475, 476 (2005) (citing *Wildman v. United States,* 28 Fed.Cl. 494, 495 (1993); *Osborn v. United States,* 47 Fed.Cl. 224, 232 (2000)); *McCauley v. United States,* 38 Fed. Cl. 250, 265–66 (1997). By the same token, this court lacks jurisdiction over the plaintiffs' claims under the False Claims Act, because monetary recovery from the govern-

ment for such claims is only authorized for *qui tam* plaintiffs, *see* 31 U.S.C. § 3730(d) (2000), and the Federal Circuit has held that such "*qui tam* suits may only be heard in the district courts." *LeBlanc v. United States,* 50 F.3d 1025, 1031 (Fed.Cir.1995) (citing 31 U.S.C. § 3732(a)).

■ Similarly, this court does not have jurisdiction over the plaintiffs' "Bivens Cause of Action Against Federal Agents." *See* Compl. ¶¶ 226–27. Though the United States Supreme Court in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), "held that a party may, under certain circumstances, bring an action for violations of constitutional rights against Government officials in their individual capacities, ... [t]he Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials." *Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997) (citing *Bivens,* 403 U.S. at 388, 91 S.Ct. 1999; 28 U.S.C. § 1491(a)). "Thus, the *Bivens* actions asserted by [the plaintiffs] lie outside the jurisdiction of the Court of Federal Claims." [5] *Brown,* 105 F.3d at 624.

■ In addition, to the extent that the complaint challenges the circumstances of Mr. Schweitzer's various indictments, arrests, prosecutions, convictions, imprisonment, or parole, or the government's collection of debts related to restitution,[6] this court does not have jurisdiction to consider his claims, as "the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to [the Court of Federal Claims]." *Kania v. United States,* 227 Ct.Cl. 458, 650 F.2d 264, 268 (1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981), *cited in Sanders v. United States,* 252 F.3d 1329, 1335 (Fed. Cir.2001).

■ However, the plaintiffs also assert a series of contract claims arising out of the use of plea agreements in the criminal justice system. "The plaintiffs['] agreements are contractual in na[tu]re, and they are therefore governed under contract law principles," they argue. Compl. C21. The plaintiffs claim that the bargains they struck with the United States in entering the plea agreements were "unconscionable," *id.* at C14, ¶ 002, and that the plaintiffs "have incurred breaches to their agreements and have suffered damages as a result." *Id.* at ¶ 003. "The plaintiffs challenge the performance of these agreements, and the manner in which the agreements were induced," *id.* at C25, demanding "specific performance or damages." *Id.* at C21.

While it is true that this court may, in very narrow circumstances, have jurisdiction over claims of breach of plea agreements with the United States, this is not such a case. Noting that "[i]t [is] possible to make a binding contract subject to Tucker Act jurisdiction, creating a liability for breach of a plea bargaining agreement," *Sanders,* 252 F.3d at 1335 (quoting *Kania,* 650 F.2d at 268), and that such agreements, though reached in criminal cases, could "theoretically[ ] provide for monetary liability for breach, assuming that the prosecutors had authority to enter into such agreement," the Federal Circuit has held that "such liability should not be implied, and could exist only if there was an *unmistakable promise to subject the United States to monetary liability.*" *Id.* at 1336 (emphasis added). The Federal Circuit further indicated that "[t]his would require the same kind of express language ... required by the unmistakability doctrine concerning government liability for the exercise of sovereign power." *Id.* (citing *Winstar Corp.,* 518 U.S. at 878–80, 116 S.Ct. 2432). As discussed below, however, no such express, unmistakable language has been presented by the plaintiffs.

With regard to Mr. Schweitzer in particular, the complaint describes (1) a plea agreement and resulting Pre–Sentence Investiga-

---

5.  Similarly, this court has no jurisdiction over the plaintiffs' claims under the contract clause in Article I, Section 10, Clause 1 of the United States Constitution, Compl. ¶ 056, because "the Contract Clause has no application to acts of the United States." *United States v. Winstar Corp.,* 518 U.S. 839, 876, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

6.  *See* Compl. ¶¶ 141–42, 144.

tion and Report ("PSR") entered into by Mr. Schweitzer in 1995, Compl. ¶¶ 105–09, and (2) a plea agreement and resulting PSR apparently entered into sometime after August 2004. *Id.* at ¶¶ 182, 193, 197. As to the first agreement, the plaintiffs claim that "[b]y and through the PSR the defendants committed acts of anticipatory repudiation." *Id.* at ¶ 109. As to the second agreement, the plaintiffs claim that the government breached the agreement by recommending a sentence enhancement, accepted by the court, which increased the sentencing range beyond that stipulated to in the agreement. *Id.* at ¶¶ 196, 201–03. The plaintiffs claim that this "netted the defendant[ ] more than it bargained for when it entered into the agreement," *id.* at ¶ 205, and that "the defendants['] advocacy of enhancements rendered the stipulated total offense level a nullity." *Id.* at ¶ 209. In addition, the plaintiffs argue that the court both facilitated the government's breach and "improvidenced the agreement" by accepting the sentence enhancement, and that "[t]he defendants and the court worked an impairment of contract," violating Mr. Schweitzer's constitutional right to contract by weakening his "means to enforce his agreement." *Id.* at ¶ 210–11.

However, the plaintiffs' descriptions of the plea agreements into which Mr. Schweitzer entered with the government do not indicate that the agreements "clearly and unmistakably" subjected the government to any monetary liability whatsoever for any breach, as required for the Court of Federal Claims to have jurisdiction. *Sanders*, 252 F.3d at 1335–36. Instead, both agreements apparently dealt with the length of Mr. Schweitzer's sentences for his convictions. With regard to the first agreement, the complaint indicates only that the government's "threats and the assurances for the safety of Schweitzer's Family were memorialized in open court and in writing, along with the government's agreement to a 27–33 month term of imprisonment." Compl. ¶ 106. With regard to the second agreement, the complaint indicates that the original agreement stipulated "to a maximum level of 17 and a criminal history cat[e]gory of IV . . . , with the possibility of a 2 level reduction for acceptance of responsibility," *id.* at ¶ 193, but that "[w]hen

the [PSR] was tendered, the reccomendations [sic] leap to an offense level of 20 and a criminal history cat[e]gory of V . . . , resulting in a doubling of the punishment." *Id.* at ¶ 197. Accordingly, because the plaintiffs have not alleged that any of the plea agreements in question expressly and unmistakably provided for monetary liability on the part of the government, this court does not have jurisdiction over their claims that those plea agreements were breached. *See Sanders*, 252 F.3d at 1336 ("No such language appears in this agreement, and the Court of Federal Claims properly dismissed this action for lack of subject matter jurisdiction.").

■ Moreover, the plea-related claims by the plaintiffs in this case are in the nature of a due process challenge to the collective plea bargaining system, and as such this court lacks jurisdiction to consider them. The plaintiffs state that "[t]here has been no meaningful review of prosecutorial procedure, techniques, and practices relating to pre-plea conduct and there exists no consistent acceptable standard for the review and the compliance with government-sponsored agreements resulting for the criminal process," though "[i]n excess of 96.6% of all governmental prosecutions result in agreements." Compl. C 11. The plaintiffs claim that, in exchange for these plea agreements, "[t]he government has induced plaintiffs to relinquish their constitutional protections," *id.*, particularly the "Sixth Amendment protections which a trial ensures," *id.* at ¶ 001, and they "challenge the processes, procedures, and methods used to induce them to bargain away constitutional safeguards as not conducive to the fair administration of justice, public confidence, nor the appearance of justice." *Id.* at ¶ 013. Indeed, the plaintiffs assert that, through these practices, the "Defendants . . . have failed to allow plaintiffs both procedural and substantive due process." *Id.* at ¶ 006. Thus, the plaintiffs are objecting to the alleged lack of due process afforded those who enter into plea agreements with the government. However, because neither the due process clause of the Fifth Amendment nor that of the Fourteenth Amendment mandates payment of money by the federal government, the Court of Federal

Claims lacks jurisdiction to consider the plaintiffs' claims that those clauses were violated. *LeBlanc*, 50 F.3d at 1028 (The Due Process Clauses of the Fifth and Fourteenth Amendments are not "sufficient bas[e]s for jurisdiction because they do not mandate payment of money by the government.").[7]

For all of the foregoing reasons, the plaintiffs' complaint is **DISMISSED** for lack of subject matter jurisdiction. The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

---

**7.** To the extent that the plaintiffs allege violations of the equal protection clause of the Fourteenth Amendment, *see, e.g.,* Compl. ¶¶ 115, 215, the same is true: the equal protection clause does not mandate payment of money by the federal government for its violation, and therefore this court lacks jurisdiction over such claims. *LeBlanc*, 50 F.3d at 1028 ("[T]he Equal Protection Clause of the Fourteenth Amendment ... is [not] a sufficient basis for jurisdiction because [it does] not mandate payment of money by the government.").

Similarly, this court lacks jurisdiction to consider claims under the First, Fourth, Sixth, Eighth, Ninth, Tenth, and Thirteenth Amendments, because none of them mandates the payment of money damages for violations. *Johnson v. United States*, 79 Fed.Cl. 769, 774 (2007) (no jurisdiction over Thirteenth Amendment violations because not money-mandating); *Ogden v. United States*, 61 Fed.Cl. 44, 47 (2004) (no jurisdiction over First, Fourth, Sixth, Eighth, Ninth or Tenth Amendment violations because not money-mandating).

Likewise, this court lacks jurisdiction over the plaintiffs' claims under 18 U.S.C. § 1385 (2000) (the Posse Comitatus Act), Compl. ¶¶ 252–55, its "Oath of Office Breach of Trust" claims, *id.* at ¶¶ 256–59, and its "Failure to Hire & Train" claims, *id.* at ¶¶ 266–69, because these statutes are not money-mandating.