Dale **CAPELOUTO**, Pro Se, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 10–823 C.

United States Court of Federal Claims.

June 17, 2011.

Dale Capelouto, Atlanta, GA, pro se plaintiff.

Antonia R. Soares, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Alan J. Lo Re, Assistant Director, Washington, DC, for defendant.

## OPINION

BUSH, Judge.

Now pending before the court is defendant's motion to dismiss, which has been fully briefed and is ripe for a decision by the court. Because the court lacks subject matter jurisdiction over the claims raised in the complaint, those claims must be dismissed pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC).

## BACKGROUND[1]

On November 30, 2010, plaintiff Dale Capelouto filed a number of documents with the court, which were collectively docketed as his complaint. Although Mr. Capelouto's "complaint" does not set forth any substantive basis for the court's jurisdiction and does not request any particular relief from this specific court, the court will nonetheless attempt to discern any potential claims raised in the documents he submitted to the court.

The first document is an e-mail from one Glenn Favre to the Tampa, Florida field office of the Federal Bureau of Investigation (FBI), dated February 2, 2008, in which Mr. Favre claims that he was the victim of theft and mortgage fraud committed by a business associate and attorney named Andre Keith Sanders. Compl. at 1.[2] Plaintiff was neither the sender nor a recipient of this e-mail, and his name does not appear anywhere in the communication.[3]

---

1. The facts recounted here are taken from Mr. Capelouto's complaint and his response to the government's motion to dismiss.

2. Neither the complaint nor the response to defendant's motion to dismiss is paginated. In this opinion, the court cites those documents as if each of them had been paginated consecutively.

The documents attached to the response were marked by Mr. Capelouto as pages 1 through 23 of Exhibit A.

3. In his application to proceed *in forma pauperis*, Mr. Capelouto listed Mr. Favre as his dependent.

The second document is a press release from the FBI National Press Office, dated June 19, 2008. *Id.* at 2. The press release describes a nationwide effort by the FBI and the United States Department of Justice (DOJ) to investigate and prosecute mortgage fraud and mortgage-related securities fraud.

The third document is an Internal Revenue Service (IRS) Form 211, entitled "Application for Award for Original Information." *Id.* at 3. The document, which is dated April 16, 2010, appears to request a monetary reward for informing the IRS of alleged violations of tax law committed by several financial institutions. These alleged violations are described in the document as

NON–DISCLOSURE OF CONSUMER CREDIT CONTRACTS CREATING USURY LOANS AND SECURITIZING MORTGAGES, FALSE CLAIMS AGAINST THE U.S. FOR THE CREDIT CONTRACT INSURANCE USING UCC PLUS PAUL HASTINGS, FORECLOSURE OWNERS POLICY.

TRANSFERRED OVER 65B WITHOUT THE PATRIOT ACT. RETROACTIVE LIABILITY UNDER FISA TO JUNE 09 FERA, FCA, SUNTRUST ROBINSON & GS.ARS.

*Id.* The application names three individual claimants: Glenn Favre, Scott Bennett, and plaintiff. According to the application, the claimants reported the alleged violations to an IRS employee named Marty Basson on August 11, 2009.

The fourth document is a letter from the Whistleblower Office of the IRS to plaintiff, dated August 11, 2009, confirming the receipt of a Form 211 filed by plaintiff. *Id.* at 4. The letter indicates that the IRS would review the information contained in the Form 211 to determine whether an investigation and monetary award were warranted, and notes that the claim had been assigned to Mr. Basson for review.[4]

The fifth document is a complaint that was filed by plaintiff and Mr. Favre in the United States District Court for the Northern District of Georgia on November 16, 2010 (Case No. 1:10–cv–3761), which names as defendants the United States Department of Energy (DOE), the Office of the Inspector General (OIG) for "the South East Fina[n]cial Crimes et al," the United States District Court for the Eastern District of Tennessee, two DOE federal agents, and a magistrate judge. *Id.* at 5–10. The complaint appears to allege that various agencies and individuals within the federal government have participated in a vast cover-up of widespread mortgage fraud committed by a number of large financial institutions. In addition, the complaint further accuses those parties of engaging in "negligent misrepresentation" of a government contract, and claims that the magistrate judge named as a defendant issued an illegal search-and-seizure warrant in connection with another case. It appears that Messrs. Capelouto and Favre have requested more than one billion dollars in damages in their district court suit, not including damages attributable to the issuance of the allegedly illegal warrant. While the complaint asserts that the defendants engaged in both negligent and intentional acts that harmed the plaintiffs, it also points to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101–7109, as the legal basis of the suit.[5]

The sixth document, entitled "Complaint for Negligence under the Federal Employers' Liability Act," purports to be an amended complaint filed in the United States District Court for the Northern District of Georgia by Messrs. Favre and Capelouto against the Defense Contract Management Agency (DCMA) in Case No. 1:10–cv–3561.[6]

---

4. Because the letter from the IRS is dated August 11, 2009, it is clear that the Form 211 referenced in that letter could not be the same Form 211 included as a part of Mr. Capelouto's complaint in this case. The Form 211 filed with the court is dated April 16, 2010. Compl. at 3.

5. The Contract Disputes Act has been relocated to sections 7101 through 7109 of title 41 of the

United States Code. *See* Act of Jan. 4, 2011, Pub.L. No. 111–350, 124 Stat. 3677, 3816–26.

6. Defendant asserts, and the court has confirmed, that Case No. 1:10–cv–3561 in the Northern District of Georgia does not involve plaintiff. The amended district court complaint is dated November 17, 2010, one day after the complaint was filed in Case No. 1:10–cv–3761. Because the copy of the amended complaint provided by

Compl. at 11–12. The amended complaint alleges that plaintiff was appointed as a "Civil Investigative Designee," or "CID," by the Federal Deposit Insurance Corporation (FDIC).[7] In that capacity, according to the amended complaint, plaintiff was directed by the FDIC to gather intelligence for some unspecified purpose.

The amended complaint further alleges that DCMA disclosed protected information in connection with "the investigation of the SEC, CFTC, Banking and Finance Fraud, Failure of Insurance Regulators, Investment Bankers and Judges." *Id.* at 11. In support of the amended district court complaint, the plaintiffs reference a number of potential jurisdictional bases:

> This action arises under the United States Constitution; the Contracts Disputes Act[ ]; No Fear Act and Civil Rights amendment(s) violations 1st–5th and under the Federal Civil R. Procedure 60(b) under federal statute, 11 U.S.C. § 522(b) 3 violated by the Department of Justice Executive Office of the Trustee, gross negligence administering the oath taken in sworn to administer their elected or appointed duties daily.

*Id.*

The seventh document is a case summary for one of the district court suits filed by Messrs. Capelouto and Favre. *Id.* at 13–14. The summary indicates that the suit is based on the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) (2006).

The eighth document in Mr. Capelouto's initial filing is an invoice, dated November 29, 2010, in the amount of $432,300 for services allegedly rendered to SunTrust Bank Holdings, Inc. and SunTrust Mortgage, Inc. by a company called EMC Search. Compl. at 15. The invoice seeks payment, to be made to Mr. Capelouto, for 4323 hours of

the following services: "Non–Legal Professional Services[,] Rendered Information[,] Technical Financial Management Auditing[,] Subcontractor Contract and Grant Management[,] C.I.D. Attorney General Appointment[,] ... FACILITATE COMMUNICATION—RESEARCH REGULATORY CONTACTS—PREPARE COMPLAINTS[.]" *Id.*

Finally, the complaint includes a completed form, dated November 29, 2010, requesting reimbursement from the Department of the Treasury, entitled "Local, County, and State *Law Enforcement Agency Request for Reimbursement of Joint Operation Expenses*[.]" *Id.* at 16. In that form, Mr. Capelouto identifies himself as a representative of DCMA, and also as the "Contract Officer" of EMC Search. The form requests a total of $169,700 in reimbursement, including $140,000 in overtime compensation, $25,000 in legal expenses, and $4,700 in other expenses. According to the form, the legal expenses for which Mr. Capelouto sought reimbursement consisted of the costs incurred for a "professional expert witness C.I.D."

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction under RCFC 12(b)(1). In its motion to dismiss, the government first argues that the complaint does not contain any claims for monetary damages from the government; rather, plaintiff alleges a number of wrongful acts on the part of private parties. Second, the government asserts that many of Mr. Capelouto's claims are beyond the jurisdiction of this court because they sound in tort. Finally, the government argues that, to the extent that plaintiff seeks to raise any claims that were already raised in his pending district court suit, such claims are barred in this court under 28 U.S.C. § 1500 (2006).

---

plaintiff was not stamped by the district court, it is unclear whether that document was actually filed with that court. It appears that plaintiff has filed at least one other suit in that judicial district (Case No. 1:10–cv–3757), but DCMA was not the defendant in that case. Instead, the plaintiffs filed suit against a number of financial institutions. Both of those suits were dismissed by the district court as frivolous pursuant to 28 U.S.C. § 1915(e)(2) (2006). *See* Order, Case No. 1:10–

cv–3761 (N.D.Ga. Apr. 4, 2011); Order, Case No. 1:10–cv–3757 (N.D.Ga. Jan. 5, 2011).

7. The amended complaint, like many of the documents included in Mr. Capelouto's submissions to the court, is incoherent and difficult to understand. The court has attempted to decipher the meaning of the amended complaint in light of the other documents filed by plaintiff in this case.

In his response to defendant's motion to dismiss, Mr. Capelouto asserts that the court may exercise jurisdiction over all of the claims raised in his complaint. First, plaintiff states that *qui tam* relator suits are within the traditional jurisdiction of this court, and further argues that the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002, Pub.L. No. 107–174, 116 Stat. 556 (the No FEAR Act), "specifically prevent[s] the Government from dismissing the Qui Tam Complaint merely for subject matter jurisdiction ... [or to] prevent embarrassment ... or public disclosure." Pl.'s Resp. at 1. In addition, plaintiff asserts that his complaint "is not sounding in tort." *Id.* Mr. Capelouto references a number of statutes, as well as alphanumeric designators that apparently refer to government contracts. In support of his claims, Mr. Capelouto attached a number of additional documents to his response.

In its reply, defendant argues that this court lacks jurisdiction over the additional claims first raised by Mr. Capelouto in his response. First, defendant asserts that the No FEAR Act cannot provide the legal basis for this suit because it is not a money-mandating source of law. Second, according to defendant, any claims under the CDA must be dismissed because plaintiff has not submitted a claim to any contracting officer and has therefore not received a final decision from a contracting officer, which is a jurisdictional prerequisite to filing suit in this court.

## DISCUSSION

### I. *Pro Se* Litigants

*Pro se* plaintiffs are entitled to a liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). However, "[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his pleading." *Scogin v. United States*, 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975)) (punctuation omitted). Here, the court has thoroughly examined the complaint, the response to defendant's motion to dismiss, and the attachments thereto, and has attempted to discern all of the legal arguments contained therein.

## II. Jurisdiction and Standard of Review

■ In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). The relevant issue in a motion to dismiss under RCFC 12(b)(1) " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Patton v. United States*, 64 Fed.Cl. 768, 773 (2005) (quoting *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). Although "pro se plaintiffs are held to a lower standard of pleading than those represented by counsel, all those seeking to invoke this court's subject matter jurisdiction ultimately retain the burden of establishing that the jurisdictional requirements are met." *See Searles v. United States*, 88 Fed.Cl. 801, 803 (2009) (citing *Keener v. United States*, 551 F.3d 1358, 1361 (Fed.Cir.2009)); *Minehan v. United States*, 75 Fed.Cl. 249, 253 (2007) ("[T]he leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.").

■ The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v.*

*United States,* 48 Fed.Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461–62 (Fed.Cir.1998); *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991)), *aff'd in relevant part,* 281 F.3d 1376 (Fed.Cir.2002). "Indeed, the court may, and often must, find facts on its own." *Id.* If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

▮▮▮ The Tucker Act provides in relevant part that the

United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2006). While the Tucker Act constitutes a limited waiver of the government's sovereign immunity, that statute "does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (*en banc* in relevant part). In addition, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). On the contrary,

[t]he claim must be one for money damages against the United States, *see United States v. King,* 395 U.S. 1, 2–3 [89 S.Ct. 1501, 23 L.Ed.2d 52] (1969), and the claimant must demonstrate that the source of substantive law he relies upon "can be fairly interpreted as mandating compensation by the Federal Government for the damages sustained."

*Id.* at 216–17, 103 S.Ct. 2961 (quoting *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)) (internal quotations omitted). If the asserted constitutional or statutory basis of a claim does not mandate the payment of money by the government, the court must dismiss the action because "the absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act." *Fisher,* 402 F.3d at 1173.

## III. Analysis of Plaintiff's Claims

Mr. Capelouto seeks damages, as well as declaratory and injunctive relief. In support of his claims, plaintiff has filed a bevy of miscellaneous documents with the court. Because the court does not have subject matter jurisdiction over any of the claims asserted by plaintiff, defendant's motion to dismiss the complaint must be granted.

### A. Claims against Private Parties

▮▮ In his complaint, plaintiff appears to assert that he was the victim of mortgage fraud and theft committed by one or more private parties. Because the subject matter jurisdiction of this court is limited to suits against the United States, any claims based upon alleged wrongdoing by private actors must be dismissed pursuant to RCFC 12(b)(1). *See United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (noting that this court "is without jurisdiction of any suit brought against private parties"); *Nat'l City Bank of Evansville v. United States,* 143 Ct.Cl. 154, 164, 163 F.Supp. 846 (1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained.") (footnotes omitted). For that reason, any claims not directed against the United States as a defendant must be dismissed as beyond the subject matter jurisdiction of this court.

### B. Claims Sounding in Tort

▮▮ In both his complaint and his response to defendant's motion to dismiss, plaintiff makes reference to "negligent" conduct on the part of the government. The jurisdiction exercised by this court under the Tucker Act, however, is expressly limited to claims "not sounding in tort." 28 U.S.C. § 1491(a)(1); *see also Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (noting that "tort cases

are outside the jurisdiction of the Court of Federal Claims"); *Brown v. United States*, 105 F.3d 621, 623–24 (Fed.Cir.1997) (noting that the court "lacks jurisdiction over tort actions against the United States"). The district courts are the proper fora for tort claims against the federal government. *See Hall v. United States*, 91 Fed.Cl. 762, 771 (2010) ("The Federal Tort Claims Act ('FTCA') grants the United States district courts exclusive jurisdiction to hear tort claims against the United States, and, therefore, the proper forum for federal tort claims is a United States district court."); *Brown v. United States*, 74 Fed.Cl. 546, 549 (2006) (holding that "the FTCA grants exclusive jurisdiction to the United States federal district courts regarding tort claims against the United States Government"). To the extent that any of Mr. Capelouto's claims are premised on tort liability, such claims must be dismissed.

### C. Criminal Claims

■ The documents contained in the complaint suggest that plaintiff was the victim of crimes committed by private parties with the assistance or acquiescence of the government. As discussed above, this court is without jurisdiction over claims against private parties. Moreover, to the extent that plaintiff seeks damages from the government based on alleged violations of criminal law, this court is likewise without jurisdiction over such claims. *See Joshua v. United States*, 17 F.3d 378, 379 (Fed.Cir.1994) (holding that this court "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code"); *Hufford v. United States*, 87 Fed.Cl. 696, 702 (2009) ("This court lacks jurisdiction to adjudicate criminal claims."). Any claims based on an assertion that the government engaged in criminal activity, or concealed criminal activity on the part of private parties, must be dismissed under RCFC 12(b)(1).

### D. Constitutional Claims

■ In the district court complaint included as part of his complaint in this court, plaintiff seeks damages for an illegal search-and-seizure warrant. Constitutional chal-lenges to the validity or legality of a warrant are typically raised under the Fourth Amendment, and this court is without jurisdiction to entertain suits under that constitutional provision. *See Brown*, 105 F.3d at 623 ("Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction over such a violation."); *Stephanatos v. United States*, 81 Fed.Cl. 440, 445 (2008) (holding that this court may not exercise jurisdiction over alleged violations of the Fourth Amendment).

Mr. Capelouto also attempts to base his suit on "Civil Rights amendment(s) violations 1st –5th[,]" Compl. at 11, which the court reads as an allegation that the government has violated his rights under the first five amendments to the United States Constitution. However, it is clear that the only constitutional amendment that may provide the jurisdictional basis for a suit in this court is the Takings Clause of the Fifth Amendment, *see Elkins v. United States*, 229 Ct.Cl. 607, 608 (1981) ("We have held that, except for the taking clause of the fifth amendment, the other amendments do not require the United States to pay money for their alleged violation."), and Mr. Capelouto has not alleged that the government has taken any property interest from him. For that reason, Mr. Capelouto's blanket allegation of constitutional violations is beyond the jurisdiction of this court.

### E. Federal Employers' Liability Act

■ Also as part of his complaint in this court, Mr. Capelouto has included a document entitled "Complaint for Negligence under the Federal Employers' Liability Act." Compl. at 11–12. As noted above, this court does not have jurisdiction over claims sounding in tort, and is therefore without jurisdiction to hear any claims based on the alleged negligence of the government. In addition, this court does not have jurisdiction under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (2006). First, FELA is a statute that allows railroad employees to recover compensation from their employers for injuries sustained in connection with their employment. None of Mr.

Capelouto's allegations appear to fall within the reach of the statute. Plaintiff does not claim to be an injured railroad employee, and this court would not possess jurisdiction over a suit against a private railroad company. Perhaps more importantly, FELA itself provides that suits brought under its provisions must be filed in state court or in the federal district courts. *See id.* § 56 (stating that district courts and state courts shall have concurrent jurisdiction over suits under FELA).

### F. *Qui Tam* Claims and the No Fear Act

In his response to the motion to dismiss, plaintiff describes his complaint as a "Qui Tam Relator Complaint," and asserts that this court has jurisdiction over such suits. Plaintiff further argues that this court has subject matter jurisdiction over this suit under the No FEAR Act. Neither of these assertions is correct.

The False Claims Act, 31 U.S.C. §§ 3729–3733 (2006), imposes treble damages and civil penalties on persons who knowingly submit false or fraudulent claims to the government. Under the False Claims Act, private parties (relators) are authorized to bring an action, known as a *"qui tam* suit," on behalf of the government when the relator possesses information that the target of the suit has submitted a false or fraudulent claim. *See id.* § 3730(b). When a *qui tam* suit is successful, the relator may be entitled to a specified percentage of any settlement or judgment. *See id.* § 3730(d).

■ It is clear, however, that all *qui tam* suits brought under the False Claims Act must be filed in the district courts. *See LeBlanc v. United States,* 50 F.3d 1025, 1031 (Fed.Cir.1995) (noting that *"qui tam* suits may only be heard in district courts"); *Schweitzer v. United States,* 82 Fed.Cl. 592, 595–96 (2008) (holding that this court does not have subject matter jurisdiction over suits seeking to recover damages from the government under the False Claims Act); *Giles v. United States,* 72 Fed.Cl. 335, 336–37

(2006) (dismissing a suit seeking a portion of the proceeds of an earlier *qui tam* suit because the district courts have exclusive jurisdiction over such actions under the False Claims Act), *aff'd,* 233 Fed.Appx. 987 (Fed. Cir.2007). Mr. Capelouto's assertion that this court possesses jurisdiction over *qui tam* relator suits is simply wrong.

■ The Federal Circuit has likewise held that this court does not possess subject matter jurisdiction over claims raised under the No FEAR Act, which

> does not create a substantive right for which the government must pay damages, but rather, it requires that federal agencies repay any discrimination or whistleblower damage awards out of agency funds rather than the General Fund of the Treasury. Thus, the No FEAR Act is not a money mandating statute, and it does not provide the Court of Federal Claims with jurisdiction over [claims based on that statute].

*Glaude v. United States,* 248 Fed.Appx. 175, 177 (Fed.Cir.2007). Because this court does not possess subject matter jurisdiction over claims based on either the *qui tam* provisions of the False Claims Act or the No FEAR Act, any such claims must be dismissed under RCFC 12(b)(1).

### G. Internal Revenue Service Whistleblower Award Statute

The purpose of the Form 211 is to request a monetary reward from the IRS under 26 U.S.C. § 7623 (2006).[8] Section 7623 provides, in relevant part, that when an individual provides information to the IRS that results in the detection of a tax underpayment or the prosecution of a tax law violation, that person "shall ... receive as an award at least 15 percent but not more than 30 percent of the collected proceeds ... resulting from the action ... or from any settlement in response to such action." 26 U.S.C. § 7623(b)(1). This court has noted, in *dicta,* that section 7623(b)(1) mandates payments to informants in certain circumstances. *See*

---

8. Plaintiff makes reference to "Internal Revenue Service Code 7623(b)," but there is no such section. In light of the IRS Form 211 provided to the court by plaintiff, the court reads that incorrect statutory citation to refer to section 7623.

*Colman v. United States*, 96 Fed.Cl. 633, 638–39 (2011).[9]

■ It is not clear whether plaintiff falls within the parameters of section 7623, and he has provided no evidence that his request for an award was denied by the IRS. In any event, section 7623 provides that "[a]ny determination regarding an award under [section 7623(b)] may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." 26 U.S.C. § 7623(b)(4). Because Congress has vested the United States Tax Court with subject matter jurisdiction over suits to recover an award under section 7623(b), such suits are beyond the jurisdiction of this court.

## H. Claims under the Bankruptcy Laws

Mr. Capelouto appears to allege violations of a number of bankruptcy laws. Indeed, both this suit and the two district court suits appear to have been triggered by a Chapter 7 bankruptcy proceeding involving Mr. Favre. This court does not, however, have subject matter jurisdiction over claims arising under the bankruptcy laws. Congress has vested original and exclusive jurisdiction over bankruptcy cases in the district courts. 28 U.S.C. § 1334(a) (2006). The district courts also possess original, but not exclusive, jurisdiction over proceedings arising under the bankruptcy laws. *Id.* § 1334(b) (2006). The district courts are empowered to refer such cases to bankruptcy judges. *See* 28 U.S.C. § 157(a) (2006). While courts other than the district courts, such as state courts, may exercise jurisdiction over proceedings arising under the bankruptcy laws, this court is not one of them. *See Hufford,* 87 Fed.Cl. at 703 ("Because Congress has committed jurisdiction of claims arising under these statutes to the district or bankruptcy courts, this court may not exercise jurisdiction.").

Similarly, this court does not have jurisdiction to review the decisions of a bankruptcy court or any other court. *Allustiarte v. United States,* 256 F.3d 1349, 1351–52 (Fed. Cir.2001) (holding that the Court of Federal Claims may not review the decisions of bankruptcy courts); *Joshua,* 17 F.3d at 380 (holding that this court may not review the decisions of district courts). In short, this court cannot entertain any claims based on the bankruptcy laws or upon challenges to the decisions of a bankruptcy court.[10]

## I. Contract Claims

Plaintiff argues that his suit is based on the CDA, 41 U.S.C. §§ 7101–7109. For the reasons discussed below, the court does not have jurisdiction in this case over any claims under that statute.

Under the Tucker Act, this court has subject matter jurisdiction over claims for monetary damages against the federal government based upon "any express or implied contract with the United States...." 28 U.S.C. § 1491(a)(1). In addition, the Tucker Act further provides that

> [t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (2006).

■ Before filing suit in this court under the CDA, a plaintiff must first submit a written claim to the contracting officer for a final decision. 41 U.S.C. § 7103. Although the CDA does not specifically define the term "claim," the Federal Acquisition Regulation

---

**9.** In *Colman,* this court held that the version of section 7623 in effect in 2003 was not money mandating, but described the current version of section 7623(b) as "non-discretionary."

**10.** Plaintiff also attempts to base his claim on Rule 60(b) of the Federal Rules of Civil Procedure, which allows a party to move for relief

from a final judgment, order or proceeding in certain limited circumstances. Fed.R.Civ.P. 60(b). However, a motion under that rule must be directed to the court that issued the judgment or order; plaintiff may not challenge the judgment of another court here.

describes a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101 (2010). The submission of a written claim to the contracting officer and a final decision on that claim are jurisdictional prerequisites to a suit in this court. *See England v. Swanson Group, Inc.*, 353 F.3d 1375, 1379 (Fed.Cir. 2004) ("We have held, based on the statutory provisions [of the CDA], that the jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim.") (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541–42 (Fed. Cir.1996)); *Omega World Travel, Inc. v. United States*, 82 Fed.Cl. 452, 461–62 (2008) (holding that the submission of a written CDA claim with the contracting officer is a jurisdictional prerequisite to a CDA suit in this court).

Defendant argues that this suit must be dismissed for lack of jurisdiction because there is no evidence that plaintiff has submitted a claim to the contracting officer responsible for any of his alleged contracts. As discussed below, the court concludes that plaintiff has not met the exhaustion requirements of the CDA. For that reason, his contract claims must be dismissed for lack of jurisdiction.

Mr. Capelouto does not provide any evidence or documentation that a claim was submitted to any contracting officer. Although the court is generally required to accept all of the complaint's allegations as true in reviewing a motion to dismiss, the court may consider evidence outside of the pleadings when the jurisdictional facts alleged in the complaint have been challenged by the government. *See Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed.Cir.2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint. . . ."). Because Mr. Capelouto bears the burden of establishing

subject matter jurisdiction, *see Alder Terrace*, 161 F.3d at 1377, his failure to provide any evidence that a claim was submitted to a contracting officer is fatal to his suit.

■ As noted above, a claim is defined as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101. The court has examined each of the documents submitted by plaintiff in this case and concludes that none of those documents constitutes a "claim" for purposes of the CDA. The court will briefly discuss the documents that might conceivably be viewed to constitute such a claim.

The Form 211 filed with the IRS in April 2010 cannot be viewed as a CDA claim because it was not submitted to a contracting officer and does not demand payment or any other relief under the terms of a government contract. Rather, the purpose of that form is to request an award from the IRS under section 7623 of the Internal Revenue Code. For the same reasons, the August 2009 letter from the IRS acknowledging its receipt of an earlier-filed Form 211 cannot be viewed as a final decision from a contracting officer.

Nor can the invoice prepared by EMC Search be viewed as a CDA claim. The invoice was not directed to a contracting officer acting on behalf of the government; instead, the invoice requested payment from private parties for professional services rendered to those parties.

Similarly, the November 29, 2010 reimbursement application submitted to the Department of the Treasury cannot be viewed as a claim for purposes of meeting the exhaustion requirements of the CDA. The purpose of that form is to allow state and local law enforcement agencies to request reimbursement of costs incurred during joint operations conducted with the federal government; it is not a request for payment or other relief under the terms of a contract between a private contractor and the federal government.

Mr. Capelouto filed several documents requesting an award from the Judgment Fund pursuant to 31 U.S.C. § 1304 (2006). While there is no evidence in the record that plaintiff is actually entitled to such an award due to an earlier judgment against the government, it is clear that the request does not meet the definition of a claim under the CDA. In addition, there is no evidence that the request was submitted to any contracting officer for a final decision.

Plaintiff also filed a document entitled "Trade Partner Agreement," under which Mr. Capelouto, allegedly on behalf of DCMA, agrees to reimburse the Department of the Treasury in the amount of $885 million for a payment made from the Judgment Fund to satisfy a judgment under the Contract Disputes Act. The document is signed by Mr. Capelouto, but is not signed by any representative of the Treasury Department. In any event, it is clear that an agreement by DCMA to reimburse the Judgment Fund cannot be viewed as a claim by Mr. Capelouto seeking money or other relief under a government contract.

Plaintiff also provided the court with copies of various documents related to DOE's award of a government contract to Messrs. Capelouto and Favre. None of those documents is a claim filed with a contracting officer that seeks relief under the contract.

Plaintiff has also filed a document that purports to be an executed agreement between Mr. Capelouto, acting on behalf of the United States, and Messrs. Favre and Scott. Under that agreement, Mr. Capelouto allegedly agreed to purchase a parcel of land in Florida for $700 million. Even if the court were to assume that Mr. Capelouto is authorized to act on behalf of the government for the pecuniary benefit of his business associates, it is clear that the agreement is not a claim for purposes of the CDA.

Finally, Mr. Capelouto submitted an e-mail that was sent by Mr. Favre to a contract specialist at DOE named David Harris on May 21, 2010.[11] The e-mail contains a list of invoices for hundreds of millions of dollars, along with an incomprehensible explanatory note. While the subject line of the e-mail makes reference to "DOE[,] DHS and DOD CONTRACTS[,]" the communication does not demand money or any other relief under a specific contract.

Mr. Capelouto has failed to prove that he submitted a CDA claim to any contracting officer responsible for his alleged contracts. Because the submission of a claim and a final decision on that claim by a contracting officer are jurisdictional prerequisites to suit in this court, the court must dismiss the contract claims for lack of subject matter jurisdiction.

## J. Requests for Declaratory and Injunctive Relief

 In his response to the motion to dismiss, plaintiff requests injunctive and declaratory relief in connection with his claims. However, the court is authorized to grant such relief in only two limited circumstances. First, the court may award injunctive and declaratory relief in bid protest cases. 28 U.S.C. § 1491(b)(2) (2006). In addition, the court may award equitable relief when such relief is "an incident of and collateral to" a money judgment. *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998). Mr. Capelouto's requests for injunctive and declaratory relief do not fall within either of those categories. Because Mr. Capelouto is not entitled to monetary damages, the court is unable to award the equitable relief he has requested. *See Brown*, 105 F.3d at 624 ("The Tucker Act does not provide independent jurisdiction over … claims for equitable relief.").

## K. Claims Raised in District Court Suits

Defendant argues that to the extent that any of Mr. Capelouto's claims in this court are based upon substantially the same operative facts as a suit filed by him in district court, such claims are barred by 28 U.S.C. § 1500. Section 1500 provides that

---

**11.** Mr. Harris sent a letter to Messrs. Favre and Capelouto discussing issues related to a contract that DOE had apparently awarded to them.

[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. The Federal Circuit has explained that "[t]he purpose of section 1500 is to prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." *Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1562 (Fed.Cir.1988).

▮ The jurisdictional bar of section 1500 is triggered when a party commences a suit in this court that is based upon a "claim" that also provides the basis for a pending suit in another court.[12] In determining whether section 1500 applies to a suit in this court, the threshold question is whether the plaintiff had a suit or process pending in another forum at the time the complaint was filed in this court. *See Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1548 (Fed.Cir. 1994) (*en banc*) ("The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action.") (discussing the holding in *Keene,* 508 U.S. 200, 113 S.Ct. 2035). The subsequent dismissal of all or any part of the district court suit prior to the filing or resolution of a motion to dismiss in this court does not affect the analysis. *See Harbuck v. United States,* 378 F.3d 1324, 1328 (Fed.Cir.2004) (noting that a "district court's dismissal of [a plaintiff's suit in that court], after it had transferred [one count of the plaintiff's district court complaint] to the Court of Federal Claims, was irrelevant to the validity under § 1500 of the latter court's subsequent dismissal of that count").

▮ In reviewing a motion to dismiss pursuant to section 1500, the court must determine whether the two suits are based upon the same "claim." In the context of section 1500, two suits involve the same claim when they are based upon substantially the same operative facts. *See United States v. Tohono O'odham Nation,* —— U.S. ——, 131 S.Ct. 1723, 1731, 179 L.Ed.2d 273 (2011) ("Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit.").

Plaintiff filed complaints in at least two separate suits in district court before he filed his complaint in this court. In addition, the complaints in both of those suits were not dismissed until after plaintiff had filed his complaint in this court. As a result, both of Mr. Capelouto's district court suits were "pending" when his action in this court was commenced. In order to avoid the application of section 1500, plaintiff must demonstrate that the two district court suits were not based on substantially the same operative facts as his suit in this court. As discussed below, plaintiff has failed to meet that test.

The Supreme Court of the United States has noted that the analysis of a motion to dismiss pursuant to section 1500 requires a comparison of the facts alleged in this court and those presented in the district court action. *See Keene,* 508 U.S. at 210, 113 S.Ct. 2035 ("By precluding jurisdiction over the claim of a plaintiff with a suit pending in another court 'for or in respect to' the same claim, § 1500 requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit."). Because Mr. Capelouto's complaint in this court is composed of, *inter alia,* the actual complaints that were filed in his district court suits, by definition the same facts and issues are present in both fora, and therefore any claims raised in those complaints are barred in this court under section 1500.

---

**12.** Section 1500 does not deprive this court of subject matter jurisdiction over suits that are filed here *before* the commencement of a district court suit based upon the same claim. *See Tecon Eng'rs, Inc. v. United States,* 343 F.2d 943 (Ct.Cl. 1965) (holding that a later-filed suit in district court did not deprive the Court of Claims of subject matter jurisdiction in an earlier-filed suit involving the same claim).

## CONCLUSION

The court has concluded that there is no jurisdictional basis in this court for any of the claims raised by plaintiff. For that reason, his complaint must be dismissed for lack of subject matter jurisdiction. The court has considered transfer of the claims over which this court lacks jurisdiction, but concludes that it is not in the interest of justice to do so.[13]

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss, filed December 21, 2010, is **GRANTED;**

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint for lack of jurisdiction, without prejudice; and

(3) No costs.

---

**13.** Although plaintiff does not request that the court transfer his case to an appropriate district court, that is the action that this court would normally take if it appeared that a particular district court had jurisdiction over the claims raised in the complaint. Under the transfer statute, "[w]henever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought...." 28 U.S.C. § 1631 (2006). In order to transfer a claim to a district court, this court must first determine that the district court has jurisdiction to hear and decide the transferred claim on the merits. In the circumstances presented here, and in light of the recent dismissal of his two suits in the United States District Court for the Northern District of Georgia as frivolous, it is clear that transfer of this suit would not be in the interest of justice.